UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE, a student by and through her parents, JOHN & MARY DOE, | ) ) ) |
| Plaintiff, | ) ) ) No. 3:19-cv-01172 |
| v. | ) ) |
| SUMNER COUNTY BOARD OF EDUCATION d/b/a SUMNER COUNTY SCHOOLS, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Nine-year-old Jane Doe,[1] through her parents, brought this lawsuit against Sumner County Board of Education d/b/a Sumner County Schools ("SCS") for its allegedly inadequate response to reports that Doe was being sexually abused by her classmate. Before the Court is SCS's Partial Motion to Dismiss (Doc. No. 6), which has been fully briefed by the parties (Doc. Nos. 7, 8, 9). For the following reasons, SCS's motion will be granted in part and denied in part.

**I.    FACTUAL ALLEGATIONS AND BACKGROUND[2]**

Doe attended Burrus Elementary School ("Burrus") as a student during the 2018–2019 school year. (Id. ¶ 14.) In January 2019, her parents reported to Burrus's Principal, Vice Principal,

---

[1] By Order entered on April 16, 2020, the Magistrate Judge granted Doe's motion to proceed under pseudonyms, "find[ing] [that] this is an exceptional case in which the privacy interests, particularly in protecting the child, strongly outweigh the presumption of open judicial proceedings." (Doc. No. 24.) The Court agrees with the Magistrate Judge's Order and will refer to the minor children involved in this case by their respective pseudonyms.

[2] The facts in this section are drawn only from the Complaint (Doc. No. 1) and are assumed to be true for purposes of ruling on the pending motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint").

school counselor, and Doe's teacher that Sally Smith, one of Doe's classmates, had been "penetrating . . . Doe's vagina and anus with her fingers . . . in the school restroom, on the school playground, and outside of school." (Id. ¶ 8.) SCS, which is a governmental entity that receives federal financial assistance and oversees the operations of Sumner County, Tennessee public schools, including Burrus, responded that it would create a "safety plan" to keep Doe safe from future abuse. (Id. ¶¶ 2–3, 9.) But according to the Complaint, SCS never put a workable safety plan in place to protect Doe from further sexual assaults, and never advised Doe's parents of any efforts to investigate their claims or discipline Smith. (Id. ¶¶ 9, 21–22.)

In February 2019, Doe's parents again asked SCS to implement a safety plan that would keep Doe safe from Smith. (Id. ¶ 11.) SCS responded by assuring Doe's parents that their daughter would have a "chaperone" whenever she was physically in the same place as Smith (e.g. at lunch, during recess, or restroom breaks) and guaranteeing that the girls would never be left alone together. (Id.) However, Smith easily eluded chaperones and again digitally penetrated Doe while they were alone in a school restroom. (Id. ¶ 12.) Doe's parents reported this additional abuse and informed SCS that its "safety plan" and "chaperone" system, to the extent they even existed, were not working. (Id. ¶ 13.) SCS responded that it could offer no further assurance to keep Doe safe. (Id.)

Doe also began exhibiting signs of physical and mental distress from the abuse as early as January 2019. (Id. ¶ 10.) Specifically, she had nightmares about Smith, slept in her parents' room, had flashbacks of the abuse, cried and was otherwise unable to manage her emotions, and "missed chunks of school time for anxiety." (Id.) In March 2019, Doe was officially diagnosed with PTSD and began attending counseling. (Id. ¶ 14.) After SCS failed to respond appropriately, Doe's

parents placed her on "'homebound instruction,' where she finished the 2018–2019 school year receiving instruction only twice per week for two to four hours per session." Id.

To prevent Smith from further harming their daughter during the 2019–2020 school year, Doe's parents requested that Doe be transferred from Burrus to Beech Elementary School, which was also three miles from their home but in a different school zone. (Id. ¶ 15.) On April 18, 2019, Beech Elementary's principal rejected their "Out of Zone" request to transfer schools. (Id. ¶ 16.) Doe's parents appealed that decision to SCS, and on May 22, 2019, SCS responded that it "reviewed the documentation submitted and ha[s] decided to deny your request for Out of Zone attendance at Beech elementary for the 2019–2020 school year." (Id. ¶ 17.) SCS suggested that Doe's parents instead submit an Out of Zone request to Madison Creek Elementary and George Whitten Elementary, but the principals of those schools later told them that a transfer was not possible. (Id. ¶¶ 17, 19.) Having no transfer options, Doe's parents withdrew Doe from Burrus and enrolled her in full-time home school for the 2019–2020 school year. (Id. ¶ 20.)

Based on SCS's allegedly inadequate response to reports of Doe's abuse and its refusal to let her transfer schools, Doe brought claims against SCS under (1) Title IX of the Educational Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681(a); (2) 42 U.S.C. § 1983 for violations of Doe's Fourteenth Amendment rights; (3) Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act" or "§ 504"), 29 U.S.C. § 794; and (4) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. SCS now moves to dismiss all of Doe's claims except those brought under Title IX.

**II.    LEGAL STANDARD**

In considering a motion to dismiss under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th

3

Cir. 2007). Plaintiff need only provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47 (1957) (internal quotation marks omitted), and the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). Nevertheless, the allegations "must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). In short, a complaint must state a plausible claim for relief to survive a motion to dismiss. Id. at 679; Twombly, 550 U.S. at 556.

### III. ANALYSIS

SCS has moved to dismiss Doe's claims under § 1983, the Rehabilitation Act, and the ADA. For ease of analysis, the Court will address these claims in reverse order.

#### A. Rehabilitation Act and ADA Claims

Doe alleges that SCS failed to reasonably accommodate Doe's disability, in violation of the Rehabilitation Act and the ADA, when it denied her requests for "constant supervision within Burrus" or "an out of zone transfer to another school within the district." (Compl. ¶¶ 37–38.) SCS argues that these claims should be dismissed because the Complaint does not sufficiently allege that Doe is disabled, and even if it did, it does not allege any link between Doe's disability and SCS's denial of her requested accommodations. (Doc. No. 7 at 5–6.) The Court disagrees.

"The [ADA] and the Rehabilitation Act combat discrimination against disabled individuals . . . [and] allow[] disabled individuals to sue certain entities, like school districts, that exclude them from participation in, deny them benefits of, or discriminate against them in a program because of

4

their disability."³ Gohl v. Livonia Pub. Schs. Sch. Dist., 836 F.3d 672, 681 (6th Cir. 2016) (citations omitted). "Apart from [§ 504's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded–as opposed to 'public'–entities, the reach and requirements of both statutes are precisely the same." S.S. v. E. Ky. Univ., 532 F.3d 445, 452–53 (6th Cir. 2008) (quoting Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 n.6 (2d Cir. 2002)). Thus, "a plaintiff seeking to state a claim under either the ADA or § 504 against a school receiving federal financial assistance must show that . . . she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of . . . her disability." Id. 453 (citing Maddox v. Univ. of Tenn., 62 F.3d 843, 846 (6th Cir. 1995)).

Regarding the first element, a person is disabled under the Rehabilitation Act or the ADA if she suffers from a "physical or mental impairment that substantially limits" one or more of her "major life activities." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(2)(A); see also Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002) (noting that the definition of a "disability" is the same under the Rehabilitation Act and the ADA). "[L]earning qualifies as a major life activity." Knapp v. City of Columbus, 192 F. App'x 323, 328 (6th Cir. 2006) (citing 29 C.F.R. § 1630.2(i); 45 C.F.R. § 84.3(j)(2)(ii)). Construing the Complaint in the light most favorable to Doe, the Court may draw the reasonable inference that Doe's signs of mental distress (including nightmares, flashbacks, and anxiety) as early as January 2019, which led to her official medical diagnoses of

---

³ Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act uses similar language and provides that a qualified disabled individual shall not, "solely by reason of her . . . disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

5

PTSD in March 2009, constituted mental impairments that substantially limited her ability to go to school and learn. (Compl. ¶¶ 10, 14 (noting that Doe "missed chunks of school time for anxiety").) Thus, given the minimal burden required to survive a motion to dismiss, Doe has plausibly alleged that she was disabled under the Rehabilitation Act and the ADA.

Doe has also satisfied the second element because the Court may infer that she was "otherwise qualified" to participate in public education by remaining at Burrus (with adequate safety measures) or attending another elementary school within Sumner County. (See Doc. No. 8 at 4–5 (citing Compl. ¶¶ 35–36).)

The third element requires Doe to show that SCS's actions—here, its failure to provide Doe with "constant supervision within Burrus" or "an out of zone transfer to another school within the district"—were taken *because of* her disability and denied her equal access to education. See Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015). A defendant's actions are taken *because of* a disability if the defendant could have "reasonably accommodated" the disability, but refused to do so. McPherson v. Mich. High School Athl. Ass'n, Inc., 119 F.3d 453, 460 (6th Cir. 1997) (en banc); see also Washington v. Indiana High Sch. Athl. Ass'n, Inc., 181 F.3d 840, 847 (7th Cir. 1999). To determine whether a plaintiff's requested accommodation is "reasonable," the Court looks at whether requiring the defendant to grant the accommodations would "impose undue financial and administrative burdens or require a fundamental alteration in the nature of the program." McPherson, 119 F.3d at 461 (citations and internal alterations omitted).

Here, the Complaint sufficiently alleges that SCS excluded Doe from participating in, or otherwise denied her the benefits of, a free public education based, at least in part, on her disability. Specifically, the Complaint alleges that if Doe had to attend Burrus with her alleged sexual abuser it would exacerbate her mental impairments and lead to "further trauma" or "re-traumatization,"

6

particularly when there were no adequate protective measures in place to prevent additional abuse. (Compl. ¶¶ 37–38.) And because the Complaint offers no allegations explaining the reasons for SCS's action or inaction, the Court may draw the reasonable inference that providing constant protection for Doe or allowing her to transfer schools would have been a reasonable accommodation for SCS to make, and certainly more reasonable than "offer[ing] no further assurance" that Doe would be kept safe at school. (See Compl. ¶ 13.) Although the Court is careful not to substitute its viewpoint for that of SCS (which is comparatively better able to assess the burdens associated with accommodation requests), it appears almost axiomatic that any financial and administrative burdens associated with providing a chaperone or granting a transfer request are outweighed by the need to protect our future leaders from being sexually abused at their elementary schools. Moreover, SCS's argument that Doe was not "otherwise qualified" for these accommodations is a factual issue more appropriately addressed in a motion for summary judgment or at trial. (See Doc. No. 7 at 5–6.)

Accordingly, the Court will deny SCS's motion to dismiss Doe's Section 504 and ADA claims.

B.     Section 1983 Claims

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." Waters v. City of Morristown, Tenn., 242 F.3d 353, 358–59 (6th Cir. 2001). Here, the Complaint plausibly alleges that SCS acted under color of state law, and SCS does not argue otherwise. (Compl. ¶¶ 30–33.)

The Complaint also alleges that SCS violated Doe's Fourteenth Amendment rights "to personal security, bodily integrity, and Equal Protection of the Laws." (Id.) As relevant here, the Fourteenth Amendment's Due Process Clause and Equal Protection Clause provide limited ways

7

for plaintiffs to bring constitutional-based peer-harassment claims against state actors such as SCS. See Jane Doe v. Jackson Local Sch. Dist. Bd. of Educ., 954 F.3d 925, 931 (6th Cir. 2020) (hereinafter "Jackson") (noting that only state actors (not students) can violate the Constitution under § 1983, which "creates difficulty for plaintiffs asserting constitutional violations [against school boards] arising out of peer harassment, like in this case"). Because the Complaint, construed in the light most favorable to Doe, appears to implicate both of these constitutional clauses and the potential for municipal liability, the Court will separately address each of these issues more fully below.

### 1. Substantive Due Process

The Complaint alleges that "SCS, acting under color of state law, deprived . . . Doe of her rights to personal security and bodily integrity" by failing to protect Doe from Smith's sexual abuse. (See Compl. ¶¶ 31–32.) The substantive component of the Fourteenth Amendment's Due Process Clause protects an individual's liberty interest in personal bodily integrity.[4] Lillard v. Shelby Cnty. Bd. of Educ., 76 F.3d 716, 724–25 (6th Cir. 1996); see also U.S. Const. amend. XIV, § 1 (providing that no state shall "deprive any person of life, liberty, or property, without due process of law").

"State actors who commit sexual assaults 'deprive' their victims of their 'liberty' interest in bodily integrity within the meaning of the [substantive] Due Process Clause," but here, it was a private student (not a state actor) who deprived Doe of this liberty interest. Jackson, 954 F.3d at 931–32 (quoting Doe v. Claiborne Cnty., 103 F.3d 495, 506 (6th Cir. 1996)). And the Sixth Circuit has made clear that "[g]enerally, substantive due process does not impose a constitutional duty on

---

[4] Although the Due Process Clause contains both a substantive and procedural component, the Complaint does not implicate procedural due process because it does not allege that SCS deprived Doe of a property interest without a fair procedure. See EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012).

a school to protect students from harm inflicted by private actors, such as their classmates." Shively v. Green Local Sch. Dist. Bd. of Educ., 579 F. App'x 348, 355 (6th Cir. 2014) (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989)); see also Jackson, 954 F.3d at 931–32. This rule follows from the plain language of the Fourteenth Amendment because "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney, 489 U.S. at 195 (noting that the Due Process Clause does not "guarantee . . . certain minimal levels of safety and security").

None of the exceptions to this general rule barring failure-to-protect claims against state actors applies here. First, the "special relationship" exception for when a victim is harmed while in state custody, Jones v. Reynolds, 438 F.3d 685, 690–91 (6th Cir. 2006), does not apply because the Sixth Circuit has "repeatedly held that students in schools are not in state 'custody[,]'" Jackson, 954 F.3d at 931–32 (citation omitted). Second, there is a "state-created danger" exception that "applies when the state affirmatively acts in a way that either creates or increases a risk that an individual will be exposed to private acts of violence." Lipman v. Budish, --- F.3d ---, 2020 WL 5269826, at *12 (6th Cir. Sept. 4, 2020). But to show a state-created danger, Doe must plausibly allege, among other things, that SCS took "an affirmative act . . . which either created or increased the risk that [Doe] would be exposed to an act of violence by a third party." Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003). Here, the Complaint alleges that SCS violated Doe's right to bodily integrity by "*failing* to take appropriate [preventative] measures; *failing* to adequately supervise its students; . . . acting with manifest deliberate *indifference* to the sexual assault and harassment of [Doe][;]" and "*failing* to appropriately investigate and remediate violations of . . . Doe's right to personal security and bodily integrity." (Compl. ¶¶ 31–32

9

(emphases added).) In other words, Doe alleges that it was SCS's *failure to act* that deprived her of substantive due process. Because the Sixth Circuit has made clear that "a failure to act is not enough" and "has often rejected a plaintiff's due process claim because the challenged conduct . . . was not an affirmative act at all," Lipman, 2020 WL 5269826, at *13, the Court finds that Doe has not plausibly alleged a claim based on a state-created danger.[5]

Accordingly, the Court will grant SCS's motion to dismiss Doe's § 1983 claim to the extent she asserts a violation of substantive due process.

### 2. Equal Protection

The Complaint also alleges that SCS violated Doe's Fourteenth Amendment right to equal protection based on her disability.[6] (Compl. ¶ 32.) "The Sixth Circuit recognizes two methods of proving an equal protection violation based on a school official's response to peer harassment: (1) disparate treatment of one class of students who complain about bullying as compared to other classes of students, and (2) deliberate indifference to discriminatory peer harassment." Stiles *ex rel.* D.S. v. Grainger Cnty., Tenn., 819 F.3d 834, 851–52 (6th Cir. 2016) (citations omitted).

#### a. *Disparate Treatment*

To establish an equal protection violation based on disparate treatment, Doe must make a threshold showing that SCS treated Doe differently–*because she is disabled*–than similarly situated students who were like her in all relevant respects. See E. Ky. Univ., 532 F.3d at 452–53 (citations omitted); see also Soper v. Hoben, 195 F.3d 845, 852 (6th Cir. 1999). Here, the

---

[5] If Doe had shown an affirmative act, she would also then need to show "a special danger to [her] wherein the state's actions placed [her] specifically at risk, as distinguished from a risk that affects the public at large; and [that] the state knew or should have known that its actions specifically endangered [her]." Cartwright, 336 F.3d at 493.

[6] The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

10

Complaint does not allege that SCS put safety plans in place, granted transfer requests, or otherwise reasonably accommodated nondisabled students seeking protection against another classmate's sexual abuse. See Stiles, 819 F.3d at 852. Nor does the Complaint even contain any general allegations about how SCS treated nondisabled students who similarly complained about or suffered from peer-to-peer harassment. Without these allegations, the Court is unable to make a plausible inference that Doe was disparately treated, let alone that she was treated differently because of her disability.[7] Accordingly, Doe cannot proceed with her equal protection claims under a disparate treatment theory.

### b. *Deliberate Indifference*

As a general matter, the Court certainly can infer that SCS was deliberately indifferent to the reports of Doe's abuse, particularly because the Complaint alleges that SCS did almost nothing in response and would not let Doe transfer schools. But to establish an equal protection violation based on deliberate indifference, Doe must plausibly allege that she "was subjected to *discriminatory* peer harassment" based on her disability. Stiles, 819 F.3d at 852 (collecting cases). Here, even when viewing the Complaint in the light most favorable to Doe, the Court cannot infer that Smith abused Doe based on her alleged disability. Indeed, the Complaint explicitly forecloses that inference because it alleges that Doe became disabled only *after* she was abused. (See Compl. ¶¶ 8–10.) Therefore, Doe has also failed to allege a plausible equal protection claim based on a deliberate indifference theory.

---

[7] Because Doe has not alleged any disparate treatment, there is no need to determine whether there was "a rational relationship between the disparity of treatment and some legitimate governmental purpose." Bullington v. Bedford Cnty., Tenn., 905 F.3d 467, 477 (6th Cir. 2018) (quoting Heller v. Doe, 509 U.S. 312, 320 (1993)); see also E. Ky. Univ., 532 F.3d at 452–53 (noting that the rational relationship test applies because disabled persons are not a suspect class for purposes of an equal protection challenge).

11

In sum, because Doe has not plausibly alleged an equal protection violation under either a disparate treatment or deliberate indifference theory, the Court will also grant SCS's motion to dismiss Doe's § 1983 equal protection claim.

### 3. Municipal Liability

Doe also appears to assert a § 1983 claim of municipality liability against SCS for its alleged "custom or policy . . . of indifference to the rights of bodily integrity of students with disabilities like" Doe. (Compl. ¶ 32.) Under the Supreme Court's decision in Monell, a "School Board cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." Claiborne Cnty., 103 F.3d 495 at 507 (citing Monell v. Dept. of Social Servs., 436 U.S. 658, 691 (1978)). But because Doe has not plausibly alleged any constitutional violations, the Court must dismiss her Monell claim as a matter of law regardless of SCS's alleged policy. Robertson v. Lucas, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under Monell without an underlying constitutional violation.").

## C. Request to Amend Complaint

As an alternative to her opposition to the motion to dismiss, Doe seeks to avoid dismissal by requesting an opportunity to amend her Complaint. (Doc. No. 8 at 3, 5.) However, it is well settled in the Sixth Circuit that a "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 486 (6th Cir. 2010). Accordingly, Doe's throwaway request to amend will be denied.

## IV. CONCLUSION

For the foregoing reasons, SCS's Partial Motion to Dismiss (Doc. No. 6) will be granted as to Doe's § 1983 claims and denied as to her ADA and Rehabilitation Act claims.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE